In re Alan C. THOMAS and Clara J. Thomas, Debtors.

Bankruptcy No. B85-2769.

United States Bankruptcy Court, N.D. Ohio, E.D.

April 11, 1986.

Elliott Ray Kelley, Cleveland, Ohio, for debtors.

Richard C. Kenney, Weltman, Weinberg & Associates, Cleveland, Ohio, for Society Nat. Bank.

Myron E. Wasserman, Cleveland, Ohio, trustee in bankruptcy.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter came on for hearing upon Society National Bank's (Society) Objection To Confirmation of the Debtors' Chapter 13 Plan. In response thereto, the Debtors caused to be filed their Brief In Opposition To Confirmation Of Plan.

*Factual Findings:*

The Debtors' personal residence was sold at a sheriff's sale on October 28, 1985. Subsequent thereto, on October 30, 1985, the Debtors caused to be filed their petition for relief under Chapter 13 of the U.S. Bankruptcy Code. Post-petition, the sale of the subject property was confirmed on November 7, 1985. On December 20, 1985, the Debtors' proposed plan of adjustment was confirmed in conformance with provisions of 11 U.S.C. 1325 and Bankruptcy Rule 3020.[1] It is the confirmation of such plan to which Society has asserted its objection.

*Plaintiff's (Society's) Contentions:*

1) The subject property should not be includible among estate property as the sheriff's sale occurred pre-petition;

2) Society contends that the proposed plan modifies its security interest in the subject realty, contrary to provisions of 11 U.S.C. 1322(b)(2);

3) Society further contends that the Debtors will wrongfully keep its collateral whereby they allegedly have no equity therein and/or the subject property is not necessary for an effective reorganization, in contravention of 11 U.S.C. 1325(a)(5)(A);

4) The Plan was not proposed in good faith under 11 U.S.C. 1325(a)(3).

1. Following confirmation of the Debtors' Plan, Society sought and was granted relief from the automatic stay, subject to a provisional sixty-day order.

*Debtors' Contentions:*

1) The subject residence remains estate property even though the sheriff's sale occurred pre-petition;

2) Although the sheriff's sale occurred pre-petition, the confirmation of that sale occurred post-petition, thereby rendering the sale void;

3) The confirmation of the subject sale was voided by virtue of the automatic stay provisions of § 362.

*Applicable Law:*

§ 1322.   Contents of Plan

(b) ... [T]he plan may—

(2) modify the rights of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence ...

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due ...

§ 1325(a)(5).   Confirmation of Plan

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

§ 108(b).   Extension of Time

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

Bankruptcy Rule 3020.   Confirmation Of Plan

(b) Objections to and Hearing on Confirmation.

(1) *Objections.*   Objections to confirmation of the plan shall be filed with the court and served on the debtor, the trustee, any committee appointed under the Code and on any other entity designated by the court, within a time fixed by the court.   An objection to confirmation is governed by Rule 9014.

(2) *Hearing.* The court shall rule on confirmation of the plan after notice and hearing as provided in Rule 2002. If no objection is timely filed, the court may find, without receiving evidence, that the plan has been proposed in good faith and not by any means forbidden by law.

*Analysis:*

I. Where appropriate, a Chapter 13 debtor is permitted to cure a mortgage default within a reasonable time period. 11 U.S.C. 1322(b)(5). If, however, foreclosure proceedings have progressed beyond a certain point, the full protection afforded by a Chapter 13 filing may no longer be available. For example, § 362(a)(5) would not operate to stay any act to create, perfect, or enforce any lien which was completed before a petition is filed to make the Bankruptcy Code operational. This point was carefully considered by the Sixth Circuit when it recently decided, *In Re Glenn,* 760 F.2d 1428 (6th Cir.1985), *cert. den.,* —— U.S. ——, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). Therein, the Sixth Circuit determined that provisions of 11 U.S.C. 1322, allowing the cure of a default, would no longer be available to debtors after a foreclosure sale. 760 F.2d at 1435. Quite specifically, the Court stated:

> [U]nder 11 U.S.C. § 1322(b) a Chapter 13 debtor may cure a default on a mortgage on his principal residence even when the debt has been accelerated and a judgment of foreclosure has been entered *provided that no foreclosure sale has taken place. Once the property has been sold, the right to cure the default and reinstate the terms of the mortgage under section 1322(b) ceases. (emphasis added). Id.* at 1442.

In order to fully appreciate the impact of the *Glenn* decision on the case at bar, relevant Ohio statutory provisions must be noted. State law is important in such matters because even though the debtor may not exercise Chapter 13 protections if foreclosure proceedings have culminated in a foreclosure sale, there still may be available to the debtor state statutory rights allowing property redemption through non-bankruptcy channels within prescribed time periods. In this regard, it is important to note that the *Glenn* court further determined that § 362(a) provisions do not toll or extend the running of state statutory periods of redemption following a foreclosure sale. *In re Glenn,* at 1442. Instead, state statutory rights of redemption are only extended in accordance with provisions of § 108(b) of the Bankruptcy Code. Section 108(b) allows an extension of the time to cure a default or redeem under nonbankruptcy law to the latter of the end of the nonbankruptcy redemption period or 60 days.

Further, in Ohio, the statutory right to redeem property is cutoff when a foreclosure sale is confirmed. Ohio Rev.Code Ann. § 2329.31 Confirmation and Order for Deed (Page 1981).[2]

> Upon return of any writ of execution ... if the court of common pleas finds that the sale was made ... in conformity with ... the Revised Code, it shall direct the clerk ... to make an entry on the journal that the court is satisfied of the legality of such sale ...

Ohio statutory law prescribes no time periods for confirmation of a sale. *In re Vieland,* 41 B.R. 134 (Bankr.N.D.Ohio 1984). The Ohio redemption statute, § 2329.33, fixes no specific period for redemption. It only allows redemption before a confirmation occurs.

II. In view of the several contentions raised by the parties hereto and the applicable law, the pivotal issue to be decided by this Court is as follows:

> Whether a pre-petition, unconfirmed foreclosure sale bars a debtor's right to

---

**2.** In sales of real estate on execution or order of sale, at any time before the confirmation thereof, the debtor may redeem it from sale by depositing with the court of common pleas the amount of the judgment or decree upon which such lands were sold, with costs. *See* Ohio Rev.Code Ann. § 2329.33. Redemption by Judgment Debtor (Page 1981).

cure defaults on his residential mortgage in view of 11 U.S.C. 1322?

The Debtors, in brief, would apparently have this Court decide that the Sheriff's sale of their personal residence did not preclude their ability to cure mortgage defaults as the sale was not finalized due to a lack of pre-petition confirmation. In support of their principal contention the Debtors have cited several Ohio cases which hold that a foreclosure sale is not final in Ohio until a State court has judicially determined that the sale was legally sufficient. In light of their contention, it is generally adhered to that Bankruptcy Courts give respect to relevant state law, except for areas in which the Congress has chosen to define the matter directly in the Bankruptcy Code. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). It must be noted, however, that the right to cure a default under § 1322 of the Code is an entirely different concept from the right to redeem property from a pre-petition foreclosure sale under state law. This Code provision allows a debtor to pay the delinquent mortgage payments inside the plan and, hence, cure the default with current payments being provided for outside the plan. On the other hand, State redemption provisions permit a debtor to "buy back" or redeem his property after the State court processes have been engaged to foreclose on the mortgage by paying in full the (mortgage) judgment amount. *See*, Ohio Rev.Code § 2329.33, *supra*. In other words, the Code allows a debtor to be reinstated into the mortgaged situation by paying arrearages along with the current payments, while state redemption allows a debtor to recover his property only upon paying the full amount of the underlying debt.

The Sixth Circuit was faced with a reconciliation of these two concepts in a bankruptcy proceeding. Its task was to determine under what circumstances § 1322(b) allows a default cure on a mortgage once acceleration of the debt has occurred.

(*Glenn, supra* at 1432.) Presently, this Court is confronted with the same question.

In deciding at what point in the foreclosure process a Chapter 13 debtor would lose his right to cure a default under § 1322(b)(5), the *Glenn* Court noted:

> All courts agree that at some point in the foreclosure process, the right to cure a default is irretrievably lost; however, the statute [§ 1322(b)(3) and (5)] itself provides no clear cut-off point except that which the courts may see fit to create. The closer the point of finality is to the beginning of the process, the greater is the protection accorded the mortgage holder, and, hence, the more attractive the home mortgage becomes as an investment. Conversely, the farther down the line the court can reach to protect the debtor from the consequences of his default, the better the debtor's needs are met by the Chapter 13 proceedings, and the more attractive those proceedings become to such debtors. *Id.* at 1435.

In balancing these competing policy interests, the Sixth Circuit chose the point of the *sale* of the mortgaged premises as the cut-off date of the debtor's bankruptcy statutory right to cure default:

> The event we choose as the cut-off date of the statutory right to cure defaults is the *sale* of the mortgaged premises. We pick this in preference to a number of other potential points in the progress of events ranging from the date of first default to the day the redemption period expires following sale. *Id.* (emphasis added).

The date of sale, as opposed to some other foreclosure processing point, was chosen by the Sixth Circuit since all forms of foreclosure, however denominated, have that point of commonality. *Id.* Thusly, while the Debtors' principal contention may have been viewed meritoriously prior to the *Glenn* decision, it cannot be presently accepted.[3] In conformity with the ruling of

---

3. Because of numerous variations among foreclosure proceedings within the several states encompassed by the Sixth Circuit, that Court deliberately avoided any effort to analyze fore-

the Sixth Circuit's effort to establish a common point along a foreclosure continuum by which no default can be cured, this Court holds that the date of sale, as opposed to some other identifiable event, is the date beyond which it bars a debtor from curing a default. To reiterate, property rights in bankruptcy are generally determined by State law, except for areas in which the Congress has defined the matter directly in the Bankruptcy Code. *Butler, supra.* With the Sixth Circuit's interpretation of the congressional intent of § 1322 having been duly enunciated in its *Glenn* decision, this Court concurs.

### *Conclusion*

While the present Debtors have correctly noted that a foreclosure sale in Ohio is not finalized until confirmed for purposes of redemption, the confirmation date is not the identifiable event point to which the Sixth Circuit has commonly established in construing § 1322 of the Code for the purpose of setting a bar date for curing defaults. Thusly, Society's objection to confirmation of sale is sustained in view of § 1322(b)(5) and the Sixth Circuit's decision in *In re Glenn, supra.*

IT IS SO ORDERED.

closure transactions in terms of state property law. 760 F.2d at 1436. Its effort was to establish a uniform cut-off date for default cures via an identifiable event. In so doing, it chose the date of sale.